UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20407-CR-COOKE/GOODMAN

18 U.S.C. § 371
22 U.S.C. § 2778
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 2



UNITED STATES OF AMERICA

vs.

**VLADIMIR NEVIDOMY and
DMITRII MAKARENKO,**
  a/k/a "Dmitryi,"

  **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At times material to this Indictment:

### The Statutes and Regulations

1.     The export of defense-related articles was regulated by the Arms Export Control Act (AECA), Title 22, United States Code, Section 2778. Section 2778(a) authorized the President of the United States ("President") to control the import and export of defense articles. Section 2778(b) provided that any person engaged in the business of exporting any defense articles shall register with the United States Department of State ("State Department"). Section 2778(c) established criminal penalties for any willful violation of Section 2778 or any rule or regulation thereunder.

2. The International Traffic in Arms Regulations (ITAR), Title 22, Code of Federal Regulations, Parts 120-130, were the regulations that implemented the President's authority with respect to the export of defense articles. By virtue of the authority delegated by the President to the Secretary of State, the State Department's Deputy Assistant Secretary of State for Defense Trade Controls, Bureau of Political-Military Affairs, was primarily responsible for administering the ITAR.

3. The ITAR contained a list of defense articles and defense services which were subject to control by these regulations. The list was called the United States Munitions List ("USML"), Title 22, Code of Federal Regulations, Part 121.1.

4. No defense articles or defense services may be exported or otherwise transferred from the United States to a foreign country without a license or written approval from the United States Department of State, Directorate of Defense Trade Controls ("DDTC"), according to Title 22, Code of Federal Regulations, Part 123.1. The ITAR also prohibited attempted exports, re-exports, transfers, trans-shipments, and diversions from foreign countries of previously exported defense articles or services without State Department authorization pursuant to Title 22, Code of Federal Regulations, Part 127.1.

## The Defense Articles

5. Generation 4 ATN MARS night-vision rifle scopes (MARS 4x4 night-vision rifle scopes) were defense articles on the USML. Title 22, Code of Federal Regulations, Part 121.1 (Category XII(c)).

6. ATN Odin 61BW 1X (30 Hz) thermal multi-purpose monoculars (ODIN 61BW

2

thermal multi-purpose monocular) were defense articles on the USML. Title 22, Code of Federal Regulations, Part 121.1 (Category XII(c)).

7. Sellier & Bellot firearm ammunition primers were defense articles covered by the USML. Title 22, Code of Federal Regulations, Part 121.1 (Category III(f)(1)).

## The Defendants

8. **VLADIMIR NEVIDOMY (NEVIDOMY)** was a resident of Hallandale Beach, Florida, who was the owner, registered agent and principal of Primex Group, Inc., a Florida corporation, located in Sunny Isles Beach in the Southern District of Florida.

9. **DMITRII MAKARENKO**, a/k/a "Dmitryi" (**MAKARENKO**), was a Russian national who resided in Vladivostok, Russia.

10. At all times relevant to this Indictment, no entity or individual appearing in this Indictment obtained the necessary license from the State Department to export defense articles to **NEVIDOMY, MAKARENKO**, or Primex Group, Inc.

## COUNT 1

1. Paragraphs 1-10 of the General Allegations above are restated and realleged as if fully set forth herein.

2. Beginning at least as early as in or around April 2013, the exact date being unknown to the Grand Jury, and continuing through in or around November 2013, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**VLADIMIR NEVIDOMY and
DMITRII MAKARENKO,
a/k/a "Dmitryi,"**

did knowingly and willfully combine, conspire, confederate, and agree with each other, and with other persons known and unknown to the Grand Jury, to export defense articles from the United States to Russia, without having first obtained a license or written approval from the State Department DDTC, in violation of Title 22, United States Code, Section 2778, and Title 22, Code of Federal Regulations, Parts 121.1, 123.1, and 127.1.

## Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendants to unjustly enrich themselves by unlawfully exporting defense articles from the United States to Russia and to evade the applicable prohibitions and licensing requirements of the AECA and ITAR and detection by the United States Government.

## Manner and Means

4. In furtherance of the conspiracy and to effect the purpose thereof, the following manner and means, among others, were used:

   A. The co-conspirators would use electronic mail (email) to communicate between Russia and the United States.

   B. **MAKARENKO** would place an order for defense articles including night-vision rifle scopes, monoculars, and ammunition primers from **NEVIDOMY**.

   C. **NEVIDOMY** would procure the defense articles from United States vendors and receive the defense articles in Broward County, Florida.

   D. **NEVIDOMY** would ship the defense articles from the United States to **MAKARENKO** in Russia without obtaining the required licenses from the State Department's DDTC.

## Overt Acts

In furtherance of this conspiracy, and to accomplish its purpose, at least one of the conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

### Transaction 1 – MARS 4x4 Night-Vision Rifle Scopes

1. On or about April 12, 2013, **MAKARENKO** sent an email to **NEVIDOMY** requesting the purchase of two ATN MARS 4x4 night-vision rifle scopes and explaining that a United States vendor had refused to sell the scopes to **MAKARENKO** because they are "restricted from shipping to" **MAKARENKO**'s location in Russia.

2. On or about April 16, 2013, **NEVIDOMY** sent an email to **MAKARENKO** quoting the price and shipping costs as $11,755 for the export of two ATN MARS 4x4 night-vision rifle scopes.

3. On or about April 16, 2013, **MAKARENKO** caused a wire transfer to be sent from a bank account in Shanghai, China, to the bank account of **NEVIDOMY**'s company, Primex Group, Inc., in the United States in the amount of $11,755 for the purchase and shipping of the two ATN MARS 4x4 night-vision rifle scopes.

4. On or about April 16, 2013, **NEVIDOMY** paid a United States vendor located in Huntsville, Texas, $9,599 for the purchase of two ATN MARS 4x4 night-vision rifle scopes.

5. In or around June 2013, **NEVIDOMY** exported two ATN MARS 4x4 night-vision rifle scopes from the United States to **MAKARENKO** in Russia.

### Transaction 2 – ODIN 61BW Thermal Multi-Purpose Monocular

6. On or about April 17, 2013, **MAKARENKO** sent an email to **NEVIDOMY** requesting the purchase of one ODIN 61BW thermal multi-purpose monocular.

5

7. On or about April 29, 2013, **NEVIDOMY** sent an email message to a United States vendor located in Antioch, California, requesting the purchase of one ODIN 61BW thermal multi-purpose monocular.

8. On or about April 29, 2013, **NEVIDOMY** emailed the California vendor a signed export compliance form acknowledging that the vendor's products are subject to United States export control laws and regulations and that "it is unlawful to export or re-export, or to attempt to export" the vendor's products without obtaining the required licenses or written approvals from the United States government.

9. On or about May 2, 2013, **NEVIDOMY** caused a wire transfer in the amount of $10,000 to be sent from the bank account of Primex Group, Inc., in the United States to the bank account of the California vendor for the purchase of one ODIN 61BW thermal multi-purpose monocular.

10. On or about June 12, 2013, **NEVIDOMY** sent an email message to **MAKARENKO** explaining that the ODIN 61BW thermal multi-purpose monocular would be delivered within the week but because a private Russian courier office was being audited the courier office recommended "not to ship the night vision scopes at this time, in order to avoid problems."

11. In or around August 2013, **NEVIDOMY** exported the ODIN 61BW thermal multi-purpose monocular from the United States to **MAKARENKO** in Russia.

12. On or about August 23, 2013, **MAKARENKO** told **NEVIDOMY** via a WhatsApp message, "I received ODIN yesterday."

### Transaction 3 – MARS 4x4 Night-Vision Rifle Scope

13. On or about June 3, 2013, **NEVIDOMY** sent an email message to a United States vendor located in Arkansas requesting a quote for the purchase of a MARS 4x4 night-vision rifle scope.

14. On or about June 3, 2013, **MAKARENKO** sent an email to **NEVIDOMY** stating that he did not need the mounting for the night-vision scope.

15. On or about June 4, 2013, **NEVIDOMY** caused a wire transfer in the amount of $2,500 to be sent from the bank account of Primex Group, Inc., in the United States to the bank account of the Arkansas vendor, part of which was a deposit for the purchase of the MARS 4x4 night-vision rifle scope.

16. On or about June 5, 2013, **NEVIDOMY** caused a wire transfer in the amount of $9,599 to be sent from the bank account of Primex Group, Inc., in the United States to the bank account of the vendor located in Arkansas, part of which was for the purchase of the MARS 4x4 night-vision rifle scope.

17. On or about June 5, 2013, **MAKARENKO** caused a wire transfer in the amount of $18,036 to be sent from a bank account in Riga, Latvia, to the bank account of **NEVIDOMY**'s company, Primex Group, Inc., in the Southern District of Florida, part of which was for the purchase of the MARS 4x4 night-vision rifle scope.

18. On or about June 12, 2013, **NEVIDOMY** sent an email message to the Arkansas vendor, attaching an "ITAR Compliance Acknowledgement" form on behalf of **MAKARENKO** acknowledging his responsibility to comply with United States export control laws and regulations, including licensing requirements.

19. On or about June 12, 2013, **NEVIDOMY** sent an email message to **MAKARENKO** informing him, in pertinent part, that the night-vision rifle scope will arrive later and that **NEVIDOMY** will put it in a container for shipment.

20. In or around July 2013, **NEVIDOMY** exported a MARS 4X4 night-vision rifle scope to Russia.

### Transaction 4 – Sellier & Bellot Firearm Ammunition Primers

21. On or about July 19, 2013, **MAKARENKO** sent an email message to **NEVIDOMY** requesting the purchase of 1,000 large-rifle ammunition primers to be placed in a container in Miami, Florida, for shipment to Vladivostok, Russia.

22. On or about August 30, 2013, **MAKARENKO** forwarded an email message to **NEVIDOMY** describing the ammunition primers previously requested.

23. On or about September 1, 2013, **NEVIDOMY** ordered 1,000 ammunition primers from the Arkansas vendor.

24. On or about September 5, 2013, in response to an email from the vendor in Arkansas indicating that the Sellier & Bellot firearm ammunition primers had been shipped, **NEVIDOMY** replied, asking how much they cost and stating that he would wire the payment.

25. On or about October 2, 2013, **NEVIDOMY** attempted to ship a parcel from Hallandale Beach, Florida, to **MAKARENKO** in Vladivostok, Russia, containing 1,000 Sellier & Bellot firearm ammunition primers.

26. On or about November 20, 2013, after **MAKARENKO** received a letter from United States Customs and Border Protection indicating that the primers had been seized for attempted illegal export without a license, **MAKARENKO** sent an email message to **NEVIDOMY** asking, "what are we going to do?"

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-6

1. Paragraphs 1-10 of the General Allegations above are restated and realleged as if fully set forth herein.

2. On or about the dates listed below, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants listed below did knowingly and willfully attempt to export and attempt to cause the export of defense articles, as detailed below, from the United States to a place outside thereof, that is, Russia, without first having obtained a license or written approval from the State Department's DDTC:

| COUNT | APPROX. DATE | DEFENDANTS | GOODS |
|---|---|---|---|
| 2 | June 2013 | **VLADIMIR NEVIDOMY** and **DMITRII MAKARENKO**, a/k/a "Dmitryi," | Two ATN MARS 4x4 night-vision rifle Scopes |
| 3 | August 2013 | **VLADIMIR NEVIDOMY** and **DMITRII MAKARENKO**, a/k/a "Dmitryi," | One ODIN 61BW thermal multi-purpose monocular |

9

| COUNT | APPROX. DATE | DEFENDANTS | GOODS |
|---|---|---|---|
| 4 | July 2013 | **VLADIMIR NEVIDOMY and DMITRII MAKARENKO**, a/k/a "Dmitryi," | One ATN MARS 4x4 night-vision rifle scope |
| 5 | October 2013 | **VLADIMIR NEVIDOMY and DMITRII MAKARENKO**, a/k/a "Dmitryi," | 1,000 Sellier & Bellot firearm ammunition primers |
| 6 | October 2013 | **VLADIMIR NEVIDOMY** | Two ATN MARS 4x4 night-vision rifle scopes |

In violation of Title 22, United States Code, Section 2778; Title 22, Code of Federal Regulations, Parts 121.1, 123.1, and 127.1; and Title 18, United States Code, Section 2.

## COUNTS 7-8

1.  Paragraphs 1-10 of the General Allegations above are restated and realleged as if fully set forth herein.

2.  On or about the dates specified below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**VLADIMIR NEVIDOMY and
DMITRII MAKARENKO,
a/k/a "Dmitryi,"**

did transport, transmit, and transfer and attempt to transport, transmit, and transfer funds to a place in the United States, from or through a place outside the United States, as specified below, with the intent to promote the carrying on of specified unlawful activity, as more specifically described below:

| COUNT | APPROX. DATE | FINANCIAL TRANSACTION |
|---|---|---|
| 7 | April 16, 2013 | Wire transfer in the amount of approximately $11,755.00 from Shanghai, China, to BB&T bank account number XXXXXXXX4950, located in the Southern District of Florida, for the purchase and export of two ATN MARS 4x4 night-vision rifle scopes |
| 8 | June 5, 2013 | Wire transfer in the amount of approximately $18,036.00 from Riga, Latvia, to BB&T bank account number XXXXXXXX4950, located in the Southern District of Florida, in part, for the purchase and export of a MARS 4x4 night-vision rifle scope |

It is further alleged that the specified unlawful activity is the attempted export of defense articles from the United States to Russia, without having first obtained a license or written approval from the State Department DDTC, in violation of Title 22, United States Code, Section 2778, as

alleged in Counts 2 and 4, respectively.

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## **FORFEITURE ALLEGATIONS**

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of property in which one or more of the defendants, **VLADIMIR NEVIDOMY** and **DMITRII MAKARENKO**, have an interest.

2. Upon conviction of a violation of Title 22, United States Code, Section 2778, or conspiracy to commit such violation, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States the following property:

   a. any property, real and personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C); and

   b. any merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation, pursuant to Title 19, United States Code, Section 1595a(d).

3. Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, involved in such violation, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), Title 19,

United States Code, Section 1595a(d), Title 28, United States Code, Section, 2461(c) and the procedures set forth at Title 21, United States Code, Section 853.

A TRUE BILL

F

_____
BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

_____
MICHAEL THAKUR
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA            CASE NO. _____

vs.

VLADIMIR NEVIDOMY and               **CERTIFICATE OF TRIAL ATTORNEY**
DMITRII MAKARENKO,
   a/k/a "Dmitryi,"

           **Defendants.**
_____/   **Superseding Case Information:**

**Court Division**: (Select One)          New Defendant(s)        Yes _____   No _____
                                          Number of New Defendants
__**X**__ Miami    ____ Key West          Total number of counts
_____ FTL     _____ WPB   ____ FTP

    I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    Yes
   List language and/or dialect    Russian

4. This case will take   6-8   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)

   I     0 to  5 days     _____              Petty      _____
   II    6 to 10 days     __X__              Minor      _____
   III   11 to 20 days    _____              Misdem.    _____
   IV    21 to 60 days    _____              Felony     __X__
   V     61 days and over _____

6. Has this case been previously filed in this District Court?   (Yes or No)   No
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes  __x__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes  __x__ No

                                                                       MICHAEL THAKUR
                                                                       ASSISTANT UNITED STATES ATTORNEY
                                                                       Court No. A5501474

Case 1:17-cr-20407-MGC   Document 3   Entered on FLSD Docket 06/16/2017   Page 15 of 16

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** Vladimir Nevidomy

**Case No:** _____

Count #: 1

Conspiracy to Export Defense Articles Without a License

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 years' Imprisonment

Counts#: 2-6

Attempt to Export Defense Articles Without a License

Title 22, United States Code, Section 2778

**\* Max. Penalty**: 20 years' Imprisonment

Counts #: 7 and 8

Money Laundering

Title 18, United States Code, Sections 1956(a)(2)(A)

**\*Max. Penalty:** 20 years' Imprisonment

Count #:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Dmitrii Makarenko, a/k/a "Dmitryi"

**Case No:** _____

Count #: 1

Conspiracy to Export Defense Articles Without a License

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 years' Imprisonment

Counts#: 2-5

Attempt to Export Defense Articles Without a License

Title 22, United States Code, Section 2778

**\* Max. Penalty**: 20 years' Imprisonment

Counts #: 7 and 8

Money Laundering

Title 18, United States Code, Sections 1956(a)(2)(A)

**\*Max. Penalty:** 20 years' Imprisonment

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**