UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20407-CR-COOKE/McALILEY

UNITED STATES OF AMERICA

v.

DMITRII MAKARENKO,

**Defendant.**

_____/

## FACTUAL PROFFER

The United States of America and Dmitrii MAKARENKO (hereinafter referred to as the "defendant" or "MAKARENKO") agree that if this matter had proceeded to trial, the government's evidence would have shown, beyond a reasonable doubt, that, among other things:

MAKARENKO and his co-conspirator Vladimir NEVIDOMY knowingly and willfully conspired to export defense articles from the United States to Russia, without having first obtained a license, in violation of the Arms Export Control Act (AECA) (22 U.S.C. § 2778), and the International Traffic in Arms Regulations (ITAR), (22 CFR §§121.1, 123.1, and 127.1); all in violation of 18 U.S.C. § 371.

From as early as April 2013 through November 2013, MAKARENKO contacted NEVIDOMY by email requesting the export of night vision rifle scopes, thermal monoculars, and ammunition primers, all of which were on the U.S. Munitions List and restricted from export from the U.S. without a license or other written authorization provided by the U.S. Department of State.

On or about April 12, 2013, MAKARENKO sent an email to NEVIDOMY requesting the

1

purchase of two ATN MARS 4x4 night-vision rifle scopes and explaining that a United States vendor had refused to sell the scopes to MAKARENKO because they were "restricted from shipping to" MAKARENKO's location in Russia. MAKARENKO and NEVIDOMY discussed that it was against U.S. law to export these items without a license but they decided to proceed with the scheme anyway. MAKARENKO sent NEVIDOMY links to the website of the U.S. manufacturer for the specific caliber of night vision devices he wanted exported. At the time that MAKARENKO sent the links, the website for the U.S. manufacturer contained warnings that the items had export restrictions.

NEVIDOMY falsely filled out export declaration forms to obtain the items for export. MAKARENKO discussed with NEVIDOMY that NEVIDOMY would use one of two methods for hiding the shipment: either by concealing the articles in household goods in containers sent through a freight forwarding company or by using a private Russian postal service that operated in South Florida. For instance, in a WhatsApp message that MAKARENKO sent to NEVIDOMY on July 7, 2013, MAKARENKO told NEVIDOMY that putting hubcaps in the same shipment as the ODIN thermal monocular would serve as a "distraction," a word the defendant used in Russian to describe his efforts to conceal, so that the thermal monocular would not be discovered. MAKARENKO also discussed with NEVIDOMY over WhatsApp that the box of primers would be well-hidden among 23 cans of baby formula.

Ultimately, MAKARENKO caused the export of three ATN MARS 4x4 night-vision rifle scopes and one ODIN 61BW thermal multi-purpose monocular, and attempted to export 1,000 ammunition primers. MAKARENKO wired the money from overseas bank accounts to NEVIDOMY in the U.S. to pay for these items. A certified license history check revealed that

neither MAKARENKO, NEVIDOMY, nor NEVIDOMY's company, Primex, ever applied or attempted to apply for an export license from the State Department for any of the primers or night-vision equipment described in this proffer.

|  |  |
|---|---|
| Date: 5/15/19 | ARIANA FAJARDO ORSHAN<br>UNITED STATES ATTORNEY<br><br>By: _____<br>MICHAEL E. THAKUR<br>ASSISTANT UNITED STATES ATTORNEY |
| Date: 5/15/19 | By: _____<br>RICARDO DEL TORO<br>ASSISTANT UNITED STATES ATTORNEY |
| Date: May 15, 2019 | By: _____<br>CHRISTIAN E. FORD<br>DEPARTMENT OF JUSTICE TRIAL ATTORNEY |
| Date: 5/15/2019 | By: _____<br>JED DWYER, ESQ.<br>ATTORNEY FOR DEFENDANT |
| Date: 5/15/19 | By: _____<br>RICHARD KLUGH, ESQ.<br>ATTORNEY FOR DEFENDANT |
| Date: 5/15/2019 | By: _____<br>DMITRII MAKARENKO<br>DEFENDANT |

3